IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WILLIAM C. PUMPHREY,<br><br>                Plaintiff,<br><br>v.<br><br>JOHN WOOD,<br><br>                Defendant. | **MEMORANDUM DECISION & ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION**<br><br>Civil No. 1:12-CV-115 TS<br><br>Judge Ted Stewart |

## INTRODUCTION

Plaintiff, William C. Pumphrey, a former inmate of the Davis County Correctional Facility (DCCF), filed this *pro se* civil-rights suit alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment. *See* 42 U.S.C.S § 1983 (2014). Specifically, Plaintiff alleges that Defendant Dr. John Wood, Medical Director of DCCF, was deliberately indifferent to Plaintiff's serious medical needs when he failed to address adequately Plaintiff's complaints of chronic pain.

As ordered, Defendant filed a *Martinez* report and summary-judgment motion with supporting memorandum, addressing Plaintiff's claims. This motion is now fully briefed and before the Court.

## UNDISPUTED FACTS

These are taken from Defendant's *Martinez* report: Defendant's affidavit; DCCF medical reports; Plaintiff's medical requests and grievances; and United States Marshal Service records.

Plaintiff's response to the summary-judgment motion primarily uses these same sources, making unpersuasive arguments about how they may be interpreted in certain ways to bolster Plaintiff's claims. However, he added no other evidence, such as affidavits by himself or anyone else, except for four pages of medical reports from other doctors in other facilities at times when Plaintiff was not in DCCF. These have no relevance to the claims of Defendant's provision of inadequate medical treatment and are not relied on here.

Plaintiff was booked into DCCF on December 13, 2011 to answer federal charges in Utah. (Wood Aff. ¶ 32.) Before DCCF, Plaintiff had been housed in the Petersburg Federal Correctional Complex in Virginia. (Wood Aff. ¶ 32; see also WOOD00003-00166.) While at Petersburg, Plaintiff was treated for chronic neck and back pain with various medications, including narcotics and Gabapentin. (Wood Aff. ¶ 46.) The Petersburg records show that Plaintiff has degenerative disk disease in his spine, which is another term for arthritis. (*Id.* at ¶¶ 50, 94.) Nothing in Plaintiff's medical records from that time indicate that he needed more drastic measures such as surgery to treat his pain, nor did the records indicate that he benefited from or needed Gabapentin. (*Id.* at ¶¶ 46, 50.) In November 2011, while still in Petersburg and one month before transfer to DCCF, Plaintiff filed a formal request to stop taking both narcotic pain medication and Gabapentin, because, in his words, they "do not work." (*Id.* at ¶ 51.)

When Plaintiff arrived at DCCF in December 2011, he reported to DCCF medical staff that he suffered from degenerative joint disease, brain ischemia, and a brain cyst, all causing him chronic pain. (*See* WOOD00168; *see also* Amended Compl at pp. 3-5.) However, when he arrived at DCCF, Plaintiff brought with him only medications for depression, reflux, and high cholesterol. (Wood Aff. at ¶ 34; WOOD00183-84.)

2

During his approximately fourteen months at DCCF, Plaintiff was seen and treated over thirty times by jail medical personnel for various complaints, including neck and back pain, gastrointestinal issues, a painful breast lump, headaches, dizziness, depression, tinnitus, and dental issues. (Wood Aff. ¶ 35; WOOD00183-97.) Every time Plaintiff requested medical attention, he received treatment. Defendant Dr. Wood personally saw Plaintiff about fourteen times. (*Id.*)

While at DCCF, Plaintiff's most consistent complaint was chronic neck and back pain. However, at none of the visits with Dr. Wood did Plaintiff exhibit objective signs of pain. Dr. Wood conducted several neurological exams of Plaintiff over time; all were normal. (Wood Aff. ¶¶ 55, 74, 82, 86, 91.) Nor did Dr. Wood find any evidence that Plaintiff was suffering from "ischemia of the brain" or that his benign brain cyst was causing any neurological problems. (*Id.*; *see also id.* at ¶ 81.) Instead, on at least two visits, Plaintiff showed signs of exaggerating or even fabricating his symptoms. (*Id.* at ¶¶ 55, 91.) Nevertheless, Dr. Wood treated Plaintiff's self-reported pain with various nonsteroidal anti-inflammatory medications. (*Id.* at ¶¶ 37, 59, 62, 69, 74). DCCF medical personnel, including Dr. Wood, closely monitored Plaintiff's pain treatment, adjusting Plaintiff's medication at least five times. *Id.* Jail medical personnel, including Dr. Wood, also carefully reviewed Plaintiff's prior medical records, including MRI test results, to ensure that their treatment plan was adequate. *(Id.* at ¶¶ 46, 79.)

While Plaintiff was at DCCF, he was also treated for various other medical conditions. When Plaintiff complained of a painful lump in his breast, Dr. Wood examined him and ordered a serum prolactin blood test, which turned out normal. (*Id.* at ¶¶ 56-57.) When Plaintiff complained of dizziness, Dr. Wood prescribed meclizine. (*Id.* at ¶ 74.) When Plaintiff

complained of nausea, he received promethazine. (*Id.* at ¶ 83.) When Plaintiff had chronic tinnitus, Dr. Wood referred him to an outside ear, nose and throat specialist for evaluation. (*Id.* at ¶¶ 85-86.)

Despite the care and attention Plaintiff received, Plaintiff complained repeatedly to DCCF medical personnel, including Dr. Wood, that the treatment was not working. (*Id.* at ¶¶ 59, 61, 62, 70; 73.) More than once, Plaintiff rejected the anti-inflammatory medications within days of them being prescribed, stating they were not working. (*Id.* at ¶¶ 62, 70.) Plaintiff specifically requested to be treated with Gabapentin instead. (Wood Aff. ¶ 55, 61; WOOD00243, 245-48.) However, Gabapentin is not considered a "cure" for any condition, but rather is a comfort medication that can sometimes provide relief from neuropathic pain. (Wood Aff. ¶ 28.) According to the manufacturer's literature, Gabapentin, also known under the brand name Neurontin, has two indicated uses: (1) postherpetic neuralgia and (2) epilepsy. (*Id.*) Gabapentin is not approved for neuropathic pain; any such use would be considered "off label." (*Id.*) Gabapentin was used only rarely at DCCF to treat neuropathic pain, for example in inmates with diabetes. (*Id.* at ¶¶ 27-29.) In other words, it will not reverse or stop a disease from progressing, but it can help with symptoms of a disease. (*Id.* at ¶ 28.)

Dr. Wood chose not to prescribe Gabapentin for Plaintiff's pain, for at least four reasons: (1) Gabapentin was not recommended by the FDA or drug manufacturer for treatment of neuropathic pain, (*id.*); (2) Plaintiff was not taking Gabapentin when he arrived at the DCCF, (*id.* at ¶ 34); (3) Plaintiff did not exhibit any signs of neuropathic pain that would indicate a need for

the drug, (*id.* at ¶ 53); and (4) Gabapentin had become problematic at DCCF in that it was being diverted and traded by inmates.[1]  (Wood Aff. ¶¶ 24-26, 29-30.)

When Dr. Wood denied Plaintiff the Gabapentin he had requested, Plaintiff filed multiple grievances, (*id.* at ¶¶ 61), and, within weeks, filed an "Emergency Title 1983 Compliant [sic]" against Dr. Wood and other defendants, alleging that Dr. Wood violated his Eighth Amendment rights by failing to adequately treat his chronic pain by refusing to prescribe Gabapentin.  (*See* Docket no. 4).  The Court ordered Plaintiff to file an Amended Complaint, (*see* Docket no. 7). Plaintiff filed an Amended Complaint on July 9, 2012 in which he re-alleges the claims of his original Complaint, and also complains that Dr. Wood should have referred him to a neurologist or neurosurgeon to evaluate his condition and for diagnostic tests such as MRIs and CT scans.[2] (*See* Docket no. 13, pp. 15-16).

Based on his own medical judgment, Dr. Wood did not believe that Plaintiff needed any additional outside treatment for his chronic pain.  Dr. Wood reviewed Plaintiff's prior MRI test results from Petersburg and from a September 2012 emergency room visit at the University Medical Center in Las Vegas, Nevada.  (Wood Aff. ¶¶ 46, 50, 79-80.)  Neither set of records indicated that surgery was planned or recommended for Plaintiff's conditions.  (*Id.* at ¶¶ 46, 50, 80.)  Plaintiff's 2012 records indicated that Plaintiff's MRI showed no acute pathology, and that he had "no focal neurological defects" (*Id.* at ¶ 80; WOOD00220), although a benign brain cyst was noted.  (Wood Aff. at ¶ 80.)

---

[1] Wood had also heard from medical directors at other correctional facilities that Gabapentin was a problem for similar reasons.  (*Id.* at ¶ 30.)  As a result, in the fall of 2012, Dr. Wood determined that Gabapentin should no longer be used at the DCCF.  (*Id.* at ¶ 64.)

[2] Pumphrey's Amended Complaint also named Davis County Sheriff Todd Richardson and Correctional Officer Dan Davis as defendants.  On December 5, 2012, pursuant to the Court's screening process, these defendants were dismissed, leaving Dr. Wood as the sole remaining defendant.  (*See* Docket no. 31.)

Benign brain cysts are most often incidental findings on MRIs which do not require treatment unless they are symptomatic (such as causing seizures).  (*Id.* at ¶ 81.)  Dr. Wood conducted multiple physical and neurological examinations of Plaintiff that did not reveal any signs of problems that could be attributable to a benign brain cyst.  (*Id.*)  When Plaintiff reported that he was experiencing nighttime "seizures," DCCF medical staff recommended that he stay in the medical unit for observation for a few nights, but Plaintiff refused.  (*Id.* at ¶ 83.)  Based on his review of Plaintiff's medical records and findings on exam, Dr. Wood did not believe that Plaintiff needed another MRI.  Nevertheless, Dr. Wood did submit a request for Plaintiff to be referred for an MRI to evaluate the status of the cyst.[3]  (Wood Aff. ¶¶ 86-87.)

Plaintiff filed recent MRI results with the Court in December 2013 (Docket no. #77; Wood Aff. ¶ 94.)  The studies show that Plaintiff has some arthritis in his spine, which is to be expected of someone his age.  (*Id.*)  Indeed, more than half of people over 50 have degenerative disk disease; it is a normal part of the aging process.  (Wood Aff. ¶¶ 50, 94.)

## SUMMARY-JUDGMENT STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant, asserting there is no genuine dispute about material facts, must support his assertion "by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or . . . showing that . . . an adverse party cannot produce admissible evidence to support the fact."  *Id.* 56(c).  A main purpose of the

---

[3] This request was denied by the U.S. Marshals Service.

summary-judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-324 (1986) (1986).  The party moving for summary judgment has the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.  This burden may be met merely by identifying portions of the records showing an absence of evidence to support an essential element of the opposing party's case.  *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998).

      Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.*  Federal Rule of Civil Procedure 56 requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nomovant." *Adler v. WalMart Stores*, 144 F.3d 664, 671 (10th Cir. 1998) (citations omitted).  The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) (citations omitted).  Mere allegations and references to the pleadings will not suffice.  The nonmovant must cite to materials that would be admissible at trial to create a material issue of fact.  Fed. R. Civ. P. 56(c).  The court, however, must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999) (citations omitted).  If the non-movant fails to meet its burden as to one element of a claim, summary judgment is appropriate on the claim.  *Celotex*, 477 U.S. at 323.

To defeat a motion for summary judgment, a party cannot merely rest on the allegations contained in the complaint and other filings. Instead, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Plaintiff must present relevant, admissible, probative evidence supporting his allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (citations omitted).

## DEFENDANT'S SUMMARY-JUDGMENT MOTION

Defendant moves for summary judgment on Plaintiff's claims, asserting that Plaintiff has not presented sufficient evidence to show a constitutional violation.

Plaintiff has alleged that the medical care offered to him was so deficient as to constitute cruel and unusual punishment, violating the Eighth Amendment. The Eighth Amendment's ban on cruel and unusual punishment requires prison officials to "provide humane conditions of confinement" including "adequate food, clothing, shelter, *and medical care*." *Craig v. Eberly*, 164 F.3d 290, 495 (10th Cir. 1998) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (emphasis added)).

To state a cognizable claim under the Eighth Amendment for failure to provide medical care, a prisoner must "'allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (emphasis omitted). In determining whether a defendant exhibited deliberate indifference, any Eighth Amendment claim must be evaluated under an objective and subjective prong: "Was the deprivation sufficiently serious?" and, if so, "Did the officials act with a sufficiently culpable state of mind?" *Wilson v. Seiter*, 501

U.S. 294, 298 (1991); *accord Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 809 (10th Cir. 1999).

      A.     <u>Whether Plaintiff's condition was sufficiently serious.</u>

A medical need is "sufficiently serious" if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (further citations and quotations omitted). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; and the existence of chronic and substantial pain are all indications that a prisoner has a 'serious' need for medical treatment." *Jones v. Hannigan*, 959 F. Supp. 1400, 1405 (D. Kan. 1997) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), cited in *Riddle v. Mondragon*, 83 F.3d 1197, 1201 (10th Cir. 1996)).

Here, Plaintiff has alleged that he has degenerative joint disease, brain ischemia, and a brain cyst, which were all allegedly causing him chronic pain. Despite these allegations, Defendant has proffered considerable evidence that Plaintiff's condition was not sufficiently serious at the time Defendant treated him.

First, Defendant has offered evidence that degenerative joint disease is simply another term for arthritis, which is quite common in older individuals. (Wood Aff. ¶ 94.) In fact, more than half of people over fifty have degenerative joint disease. (*Id.*) Second, at nearly every exam, Plaintiff did not appear in any distress. (Wood Aff. ¶ 39, WOOD00185; ¶ 52, WOOD00186; ¶ 55, WOOD00186; ¶ 57, WOOD00186-87; ¶ 74, WOOD00191; ¶ 91,

9

WOOD00197.) Defendant conducted many physical and neurological exams of Plaintiff. These exams did not show symptoms of brain ischemia such as vision impairments, muscle weakness, abnormal nystagmus (involuntary eye movements) or difficulty speaking. (Wood Aff. ¶¶ 53, 55, 74, 82, 86, 91.) Nor did these exams reveal any objective evidence of neuropathic pain, or that Plaintiff's benign brain cyst was causing any focal neurological problems. (*Id.*; *see also* Wood Aff. ¶ 81.)

Moreover, there is evidence that, at least twice at DCCF, Plaintiff embellished or even faked his symptoms. In one instance, Plaintiff was moving his neck normally until Defendant focused on it, at which point his range of motion became severely limited. (Wood Aff. ¶ 55.) Another time, Plaintiff exhibited "cogwheeling," a stuttered resistance that is a sign of feigning muscle weakness. (Wood Aff. ¶ 91.)

Plaintiff has argued that his MRI test results are evidence of the seriousness of his condition. However, Defendant has provided evidence that none of Plaintiff's prior MRI results showed any acute brain pathology, though a benign brain cyst was noted. (Wood Aff. ¶¶ 50, 80.) Benign brain cysts are most often incidental findings on MRI which do not require treatment, unless they become symptomatic. (Wood Aff. ¶ 81.) At no point during his exams of Plaintiff did Defendant find any signs of problems that could be attributable to the existence of his benign brain cyst. (*Id.*) Plaintiff's prior medical records did not indicate that Plaintiff needed or was scheduled for surgery or further neurological workups to treat his chronic pain. (Wood Aff. ¶¶ 46, 50, 80.)

Plaintiff's more recent MRI results, filed with the Court in December 2013, (Docket no. #77), show only that Plaintiff has some arthritis in his spine, which is to be expected of someone

his age.  (Wood Aff. ¶ 94.)  Moreover, MRI results do not necessarily correlate with a patient's pain level--pain cannot be seen on MRI.  (Wood Aff. ¶ 95. )  In other words, some patients can have findings on MRI that correlate with pain; others can have the same findings and exhibit no pain at all.  (*Id.*)  As a result, Plaintiff's MRI results were not dispositive, but rather were one of several data points Defendant used to determine, in his medical judgment, the proper course of treatment for Plaintiff.  (*Id.*)

Defendant has also offered evidence that Plaintiff has refused treatment for his health issues, which contradicts his claims that his conditions are serious.  For example, when Plaintiff complained of nighttime seizures, DCCF medical staff recommended that he stay in the medical unit for observation for a few nights, he refused.  (Wood Aff. ¶ 83.)  In November 2011, one month before his transfer to DCCF, Plaintiff refused his narcotic pain medications and Gabapentin, choosing to take only non-steroidal anti-inflammatories.  (Wood Aff. ¶ 51.)  Plaintiff's reason for stopping these medications was that they "do not work."  (*Id.*)  If Plaintiff's pain had been as excruciating as he claims, it can be reasonably argued that he would not have stopped taking these prescription medications.  In fact, when Plaintiff arrived at DCCF in December 2011, he did not bring any prescriptions for any pain medications.  (Wood Aff. ¶ 34.)

The facts here are very similar to those in *Todd v. Bigelow*, No. 2:09-CV-808 DAK, 2012 U.S. Dist. LEXIS 24252 (D. Utah Feb. 24, 2012).  In that case, the plaintiff suffered from chronic hip pain and was prescribed Gabapentin.  When the plaintiff was caught "cheeking" (avoiding swallowing) his dose, his prescription was discontinued. *Id.* at *9.  The plaintiff was offered alternative pain medications, including naproxen, which he refused. *Id.* at *10.  Instead, the plaintiff sued, alleging that defendants' denial of Gabapentin constituted cruel and unusual

punishment under the Eighth Amendment. *Id.* at *1. The court granted summary judgment in favor of defendants, finding that the discontinuation of plaintiff's Gabapentin was based on legitimate concerns about abuse. *Id.* at *16. The court found that "Plaintiff's dogged pursuit of Neurontin [Gabapentin], coupled with his rejection of other pain medications less susceptible to abuse, is consistent with someone seeking medications for illicit purposes, rather than merely for chronic pain relief." *Id.* at *15.

Although there is no evidence here that Plaintiff has ever attempted to divert any of his medication, facts suggest that Plaintiff may have wanted Gabapentin for other purposes. Plaintiff's singular focus on obtaining Gabapentin is suspicious, given that the drug had become a commodity among inmates at the DCCF. (Wood Aff. ¶ 29.) In at least two instances, Plaintiff reported within a few days that his anti-inflammatory pain medications were not working and demanded Gabapentin instead, despite being advised that anti-inflammatory medications can take up to two weeks to take effect. (Wood Aff. ¶¶ 62, 70.) Plaintiff's near-immediate rejection of alternative pain medications suggests that he wanted Gabapentin for other purposes. When Plaintiff did not receive the Gabapentin requested, he filed multiple grievances (Wood Aff. ¶ 61), and, within weeks, filed an "Emergency Title 1983 Compliant [sic]" alleging violations of his Eighth Amendment rights. (*See* Docket no. 4.) As in *Todd*, Defendant had legitimate safety concerns about Gabapentin being abused by inmates at DCCF. Also, as in *Todd*, there were alternative medications available for treating Plaintiff's pain that were not as susceptible to abuse.

Plaintiff contends that his situation is similar to that of the plaintiff in the *Arnett v. Bigelow* case, 658 F.3d 742 (7th Cir. 2011). However, Plaintiff's reliance on the *Arnett* case is

misplaced. There, the plaintiff had a diagnosis of rheumatoid arthritis (RA), a chronic autoimmune disease that progressively destroys a person's joints. *Id.* at 746. Plaintiff had a letter from his prior doctor stating that plaintiff needed Enbrel, a medication that reduces RA's progression. *Id.* at 746-47. Plaintiff showed objective evidence of pain in the form of swollen joints and the need to walk with a cane. *Id.* at 747. When prison officials refused plaintiff Enbrel, or even any anti-inflammatory medication, plaintiff's RA worsened, and he suffered permanent damage to his joints. *Id.* at 753-54. The court in *Arnett* declined to grant summary judgment in favor of the defendant doctor who failed to treat plaintiff's condition. *Id.* at 760.

This case is distinguishable from *Arnett* in multiple ways. The plaintiff there exhibited objective signs of his condition's seriousness, such as swollen joints and the need to walk with a cane. However, here, despite many physical and neurological exams, DCCF medical personnel, including Defendant, did not make any objective findings that Plaintiff was in severe pain. Quite the opposite—at least twice, Defendant believed that Plaintiff was malingering. In *Arnett*, the plaintiff had a recommendation from a treating physician that specifically recommended a particular medication that would stop plaintiff's RA from advancing. Here, there is no evidence that Plaintiff is at risk of injury or substantial harm, or that there is any medication that could stop his conditions' advancement. Defendant has offered evidence that Gabapentin is not a "cure" for any condition, nor does it stop any disease's advancement. (Wood Aff. ¶ 28.) In fact, using Gabapentin for treatment of pain is not even one of the indications listed in the drug manufacturer's literature. (Wood Aff. ¶ 28, Attachment 1.) Plaintiff has not offered any admissible evidence that he has suffered any permanent injury as a result of Defendant's allegedly inadequate care.

Given the undisputed facts described above, Plaintiff cannot satisfy the objective element of an Eighth Amendment deliberate indifference claim, that his condition was "sufficiently serious."

B.     Whether Dr. Wood provided adequate medical care to Plaintiff.

The subjective component of the Eighth Amendment deliberate-indifference inquiry requires the plaintiff to show that prison officials were consciously aware that the prisoner faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Deliberate indifference is "more than negligence and approaches intentional wrongdoing." *Collignon v. Milwaukee County,* 163 F.3d 982, 988 (7th Cir. 1998) (citation omitted). In other words, the treatment must be "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate [an inmate's] condition." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (citation omitted). "A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, which is that 'no minimally competent professional would have so responded under those circumstances.'" *Arnett*, 658 F.3d at 751 (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)).

In this case, Defendant has offered evidence that he took Plaintiff's complaints seriously. He saw Plaintiff at least fourteen times. (Wood Aff. ¶ 35.) He reviewed Plaintiff's prior medical records and test results. (Wood Aff. ¶¶ 46, 79.) When Plaintiff reported that certain pain medications were not working, he was switched to other medications. In fact, Plaintiff's pain medications were adjusted at least five times. (Wood Aff. ¶¶ 37, 59, 62, 69, 74). When Plaintiff

was experiencing chronic tinnitus, Defendant referred Plaintiff to an outside ear, nose and throat specialist for evaluation. (Wood Aff. ¶¶ 85-86.) When Plaintiff complained of a painful lump in his breast, Defendant examined him and ordered a serum prolactin blood test, which turned out normal. (Wood Aff. ¶¶ 56-57.) When Plaintiff complained of dizziness, Defendant prescribed meclizine. (Wood Aff. ¶ 74.) When Plaintiff complained of nausea, he received promethazine. (Wood Aff. ¶ 83.) Defendant also requested an MRI test to evaluate the status of Plaintiff's benign brain cyst. (Wood Aff. ¶¶ 86-87.)

Defendant has offered substantial evidence that his treatment of Plaintiff was more than adequate. In fact, Defendant meets the applicable standard of care for a provider of correctional medicine. (Wood Aff. ¶ 96.) When such a standard is met, an Eighth Amendment violation cannot be established. *See Arnett*, 658 F. 3d at 750-751.

Defendant was not required to prescribe Gabapentin as requested by Plaintiff, even though Plaintiff complained of continued pain. "It is well-settled that a mere difference of opinion regarding the proper treatment for a medical condition is not sufficient to show deliberate indifference, and medical personnel are entitled to substantial deference in choosing a proper course of treatment." *Todd*, 2012 U.S. Dist. LEXIS 24252, at *17. A prisoner who "merely disagrees with a diagnosis or prescribed course of treatment does not state a constitutional violation." *Perkins*, 165 F.3d at 811 (citations omitted); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.").

"Generally, neither the fact that a prisoner continues to experience pain despite treatment nor the fact that jail physicians refuse to provide him with the specific pain medications he

requests is sufficient to state a constitutional claim." *Dickerson v. Strain*, No. 08-4651, 2009 WL 2023866, at *5 (E.D. La. July 9, 2009) (citations omitted); *accord Mosley v. Snider*, No. 00-6310, 10 Fed. Appx. 663, 664 (10th Cir. Mar. 22, 2001) (unpublished) (holding no deliberate indifference where physician discontinued prisoner's preferred medication when it was medically determined to be unnecessary and other prescription was provided); *see also Boyett v. County of Wash.*, No. 06-4315, 282 Fed. Appx. 667, 674 (10th Cir. 2008) (unpublished) ("[A medical professional]'s prescription of substitute medication for [an inmate] does not demonstrate deliberate indifference.") (citations omitted); *Jones v. Garden*, 2:06-CV-527 DAK, 2007 U.S. Dist. LEXIS 45313,a t *13 (D. Utah June 21, 2007) (unpublished) ("While prison officials are constitutionally required to ensure that inmates receive adequate care, specific decisions as to which particular drug an inmate receives are left to the discretion of prison medical personnel . . . .").

This case is similar to that of *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992), in which the plaintiff inmate injured himself playing basketball, and was treated by prison medical personnel with pain medication. *Id.* at 1536-1537. When the medical personnel did not give plaintiff the specific pain medication he wanted, or refer plaintiff to a particular specialist that he thought he needed, plaintiff sued, alleging that defendants' refusal to provide this treatment violated his Eighth Amendment rights. *Id.* at 1537. The court in *Ledoux* upheld the lower court's finding of summary judgment for defendants, holding that "Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is, as the district court correctly recognized, insufficient to establish a constitutional violation." *Id.* at 1537. The fact that the

16

plaintiff received *some* medication for his pain was sufficient. *Id.; see also Todd*, 2012 U.S. Dist. LEXIS 24252, *18 (stating "fact that Defendants tried to accommodate Plaintiff [by offering alternative medication] showed that they were not deliberately indifferent to his needs") Moreover, as explained already, Gabapentin is not indicated for the treatment of any particular disease, let alone degenerative joint disease; neither of the indicated uses in the drug manufacturer's literature is for neuropathic or arthritic pain.

    To support his argument that Defendant was deliberately indifferent to his chronic pain, Plaintiff asserts there are other doctors who believed that he needed surgery to treat his chronic pain. However, the fact that others may have earlier provided Gabapentin, or recommended surgery, is not binding on Defendant. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977) (holding that "variations in the views"--between prison-affiliated doctors that no surgery was needed and private physician recommending and performing surgery--did not rise to level of Eighth Amendment violation); *White v. Napoleon*, 897 F.2d 103, 110 (3rd Cir. 1990) ("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness.")

    Rather, as was the medically appropriate and expected practice of any physician, Defendant conducted his own independent evaluation of Plaintiff's condition, and used his professional medical judgment to determine what medications to prescribe to Plaintiff. He reviewed Plaintiff's prior medical records from Petersburg and the University Medical Center in Las Vegas. (Wood Aff. ¶¶ 50, 79-80.) None of those records, which included MRI tests, CT

scans, and neurological evaluations, indicated that Plaintiff needed any additional neurological treatment, let alone surgery, to treat his chronic pain. *Id.* There is thus no evidence in the record showing that any outside physician had ever recommended that Plaintiff receive any further neurological workups or surgery.[4]

Defendant conducted many physical and neurological exams of Plaintiff, and, based on those findings, used his medical judgment to decide which pain relievers to provide Plaintiff. When Plaintiff complained that a particular pain reliever was not working, Defendant adjusted his medications. In Defendant's professional opinion, Plaintiff did not need Gabapentin. This was especially so given that Plaintiff had previously refused to take it and that Gabapentin had been abused by inmates at the DCCF. (Wood Aff, ¶¶ 51, 29.) While Defendant's treatment may not have been Plaintiff's preferred course, it was nonetheless a course of treatment determined based on Defendant's medical judgment. Thus, Plaintiff cannot show that Defendant was deliberately indifferent to his condition.

Finally, the fact that Defendant may have not been friendly towards Plaintiff is not sufficient to establish the requisite state of mind for an Eighth Amendment violation. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (stating that defendant laughing at plaintiff and even threatening to hang him was insufficient to state constitutional deprivation under § 1983).

## CONCLUSION

Defendant has satisfied his burden on summary judgment of showing that Defendant did not violate Plaintiff's Eighth Amendment rights, and showing an absence of evidence to support

---

[4] Even if there had been such a recommendation in Pumphrey's records, and Defendant had chosen a different course, he would have been entitled in his professional judgment to do so. See *Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999) (holding no deliberate indifference when prison physician considers, but takes a different medical course of action from, recommendation of outside physician).

Plaintiff's claims. Because Defendant did not violate Plaintiff's rights, summary judgment for Defendant is appropriate on all Plaintiff's claims.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

**(1)** Defendant's Motion for Summary Judgment is **GRANTED,** and Plaintiff's claims are **DISMISSED** with prejudice.

**(2)** Any remaining motions filed by Plaintiff or Defendant are **DENIED** as moot.

**(3)** The clerk shall enter judgment accordingly and **CLOSE** this case.

IT IS SO ORDERED.

Dated March 25, 2015.

BY THE COURT

_____
JUDGE TED STEWART
United States District Court